Good morning, Your Honors. David Jacobs, Epstein Becker Green, on behalf of Appellant Dean Decker, I would like to reserve four minutes for rebuttal. I'm sorry, four minutes? Four minutes. So the question before us is, will the courts permit an award in clear violation of longstanding public policy in the state of California? The award before us awards a penalty for Mr. Decker's temerity to compete with Jeffries. What if there weren't a liquidated damages clause, but he just, there were just assumed for damages for his breach of contract for not coming to work when he said he would? Would you have the same problem? Don't have the same problem, Your Honor, because we don't. As a matter of fact, the case was bifurcated. I'm sorry. Because there was a, there was a liquidated damages provision. Right. And in case the arbitrators, as they did in several other cases, found liquidated damages provision violated California law, the other remedy was you can sue for actual damages, if you can prove actual damages. Then it's really very mysterious to me. I mean, if you could have actual damages, and this is liquidated damages, which has a public policy of California as well to permit a liquidated damages clause. Excuse me. I'm sorry, Your Honor. And if there is no, if this is a reasonable liquidated damages clause, then I don't understand your argument at all. Fair question, Your Honor. I know it's a fair question. That's why I asked. So the liquidated damages clause we have in issue in this case is not really a liquidated damages clause. It only comes into effect, and the penalty only exists, if Mr. Decker competes with Jeffries. That's not a liquidated damages clause. That's a non-compete clause. Now, if, if, if. I understand that it didn't have a liquidated damages provision, but the breach was only if he did X and Y. Well, if he, if he didn't show up because he went into government, for example. No, but suppose he didn't show up, suppose that the, the statute, the contract was exactly as it is, except it didn't have a liquidated damages provision. It was just a contract. So if you could stay with, if he stayed with Credit Suisse, there was a breach of contract. If he went somewhere else, there wasn't a breach of contract. Well, if he stayed, well, if he stayed with Credit Suisse, they couldn't, there would be, that would be a penalty for staying at Credit Suisse and competing. Now, if they could show. It would be true, even if there wasn't a liquidated damages provision. I'm sorry, Your Honor, no liquidated damages provision. That is true. If there's a penalty for staying at Credit Suisse. Penalty being that you breached the contract and we want damages. Then you can't, you, you can't have a penalty for staying, for staying or competing, period. Whether it's called liquidated damages or anything else. Now. I want to return to the sort of the, the, the arbitration itself. Did you request a reasoned decision at the arbitration stage? Neither party requested a reasoned decision. Then, without a written decision, how do we know what the arbitration panel reason was, such that we can determine that they ignored the law? Two answers to that, Your Honor. Okay. One, we are under the public policy exception. You don't need to know the reasons of the arbitrators. If the award itself is in violation of public policy, long established public policy, that is enough. Because a court, federal court, will not enforce an award that is in violation of public policy. For obvious reasons, the court doesn't want to give its imprimatur to an award that violates the law. So, on public policy, that's not a consideration. Manifest disregard, it's a consideration. There are certain legally dispositive facts that this case has. And on those legal, and I'll tell you what they are. The agreement was covered by California law. The agreement is an employment agreement. The agreement refers to Jeffrey's handbook for definition of competitive activity. The liquidated damages clause operates only if Mr. Decker does not report to work for the post-employment period when he has no obligation to the employer anymore. And all of the cases, am I wrong to say that basically all of the cases which apply the stringent rule deal with somebody who is being required after he has no obligation to the employer not to compete? And this is not the situation here. He had an obligation to the employer here, even though he wasn't employed. The at a certain time and work. So, it was a reciprocal agreement at that point. No one was trying to bind him after he was no longer obligated to the employer. Understood, Your Honor. Two responses to that. One is that there is no law that restricts restrictive covenants or 16-600 to post-employment. That is the typical scenario. In order to be a public policy, it has to be an absolutely clear, well-established, and variable rule. We don't have that here because we have no case like this, as far as I know, in which there wasn't a commitment to go to work for someone. What if he was actually working there? Could you have such a rule? I'm sorry, Your Honor? What if he had already begun working there? Could they have such a rule? That is, you can't, on the side, be doing stuff for credit suites? They could have a rule that he could not have another job if he was employed with them, yes. Right. Okay. So, essentially, that's what this was. You made a commitment. We're not paying you yet, but we have a commitment to pay you. In fact, we're going to have to pay you if we don't employ you. It was completely reciprocal. So, at a minimum, it's different from anything in any of the case law. Is that right? Your Honor, yes. There are no pre-employment cases that talk about 16-600. So, how can that be a well-established, etc., etc., public policy? It is a well-established public policy. Indeed, it's such a well-established public policy, it goes back 150 years, that you cannot penalize somebody for competing, whether it's pre-employment or post-employment. You don't need a case that says, oh, yeah, this is a hard and fast rule that we will not countenance. It's not just pre-employment. This is pre-employment with an obligation that if they don't, in fact, employ him, they're going to pay him $10 million. Isn't that right? If they had backed out, they would have owed him $10 million. Right. That is a consideration that is not relevant in a case where 16-600 is... So, essentially, they were paying him because they had, I mean, they had an irrevocable agreement that starting on a certain date, they were going to pay him a goodly amount of money, and if they didn't do it, they owed him $10 million. That sounds pretty close to an employment, a current employment deal. The rule, the 16-600 rule in the employment context is a per se rule. Any penalty on competition is per se invalid. It doesn't matter when it occurs. Not while you're working. You already said that. That's true. It's not while you're working. Okay. But if it's pre-employment or post-employment, it's a per se rule. If it's a per se rule, there's no balancing test, because if there's a balancing test... There is no pre-employment case, you told me. There's no... I can't point you to a case that applies except this one. You keep saying it's pre-employment or post-employment, but there's no pre-employment case. That wouldn't, it shouldn't make a difference in a per se rule, because you could have all manner of contracts. Look at the mischief that would cause. For example, Mr. Decker, while you're in your interim period, you may not interview anyone over 40 for hiring at Jefferies when you join. Can't do it. You may not do that. And you know what? We won't hire anybody over 40 either. Does anybody think that award would be sustainable? No, because it's illegal, just like this is. Doesn't matter whether it's pre-employment or post-employment. When the cases are legion, legion, that in 16-600, in the employment context, is a per se rule. Any penalty attached to competition is unlawful. Doesn't matter when it occurs. Besides which, we have this problem that Judge Mendoza pointed to, which we have no idea why the arbitrators ruled as they did. They could have ruled as they did for completely different reasons. We don't know what they are. Well, again, Your Honor's talking about manifest disregard, but there are, as I was going through them, there are legally dispositive facts here which the arbitrators No, I actually wasn't talking about manifest disregard. With regard to public policy as well, for the same reasons, we don't know what they ruled. But we don't need to know why they ruled the way they did on public policy, Your Honor. All we need to know is there is an award that penalizes Mr. Decker for having competed. That's illegal. That's in violation of California public policy. We don't need to know why. Doesn't matter why under the law. Counsel, you have four minutes left. Did you want to reserve that? I did. Okay. Thank you. Good morning. Good morning. May it please the Court, Andrew Shapron on behalf of the appellee, Jeffries, LLC. Jeffries' motion to confirm the award in this case and Mr. Decker's motion to vacate were both explicitly filed under the Federal Arbitration Act and not under any other authority. Accordingly, Decker cannot rely on any ground for vacater other than those specifically set forth in Section 10A4 of the Federal Arbitration Act. And what is the one that's specifically set forth? It's not that specific. What does it actually say? So 10A4 would be that the arbitrators exceeded their powers. Right. And it's under that one where this Court has recognized manifest disregard for the law falls under that specific Section 10A4. And before the district court, Mr. Decker's lead argument was under manifest disregard for the law. And while this circuit has recognized that ground, it's also set forth some very specific and very stringent standards that a party must satisfy in order to establish that an award should be vacated. I guess I just don't understand why they wouldn't have asked for a reasoned decision. I don't understand that. Was it the money thing? But we're talking about a lot of money here. Why not get a reasoned decision? On behalf of Jeffries, I can just tell you we rarely do, if ever. And as you point out, the nice circuit makes it very clear that in the absence of a reasoned decision, it's all but impossible to establish manifest disregard. So now on appeal, Mr. Decker has flipped the script. But there were two other rulings around the same time and similar people, and those were reasoned decisions, weren't they? No. It just came out the other way. Well, the one did say we find this clause is invalid under 16-600. That's all it said. The other one said nothing. Okay. You know, now on appeal, though, we flipped the script. And I think realizing that Mr. Decker realizes he can't establish manifest disregard for the law, he relies on public policy. But it's really just a repackaging of the manifest disregard argument, with the difference being that Mr. Decker believes if you say public policy, you can disregard the stringent standards that this circuit has set forth for review of an arbitration award under the FAA. And, in fact, Mr. Decker has gone so far in his reply brief to say, as long as someone claims there's a violation of public policy, this court should review the arbitrator's award de novo. What about his argument that this is all very clear public policy that this is in violation of? Yeah, I would say that it's not. Section 16-600 is hotly litigated in courts throughout California all the time, as I think is evidenced in the briefs. And very importantly, every single case relied upon by Decker in the arbitration dealt with post-employment restrictions on employees. Are there any cases of pre-employment litigation? There are none. Or cases, rather. There are none. Okay. And we argued extensively to the panel, similar to what Judge Barzone was alluding to, that if this case is more like anything, it's more like a term employment agreement, which are valid in California, even though they restricted employees' right to leave and go work somewhere else. So there's nothing on point, but this is far more. In a term employment agreement, are there cases that say that if you've promised to work for three years and you leave after a year and a half, and it also says you can't go work, you can't work during that three years for a competitor, the competitor requirement continues to apply even if you're no longer working for them? Correct. Is that basically what you're saying? Correct. Or there's a building consequence often, which is if you leave before the end of the three years, you have to pay X, and if we fire you before the end of the three years, we have to pay you Y. But also with regard to the competition question specifically. I mean, if you leave before the three years and go work for a competitor, you have to pay X. Correct. Now, I think what's really important here, too, is the Supreme Court of California's ruling in Ixgel v. Biopharma, which really put, in our view, kind of an end to Mr. Decker's argument that the panel should take this post-employment restrictive covenant law and apply it pre-employment. This is in 2020, and the Ixgel Court is talking about the very cases relied upon by Mr. Decker, Edwards v. Arthur Anderson, Chamberlain, the same cases cited again and again in their brief. And the Supreme Court of California said, it is true that these decisions spoke in broad terms, suggesting that restraints on trade in all contexts are void per se, but it is axiomatic that an unnecessarily broad holding is informed and limited by the facts of the case in which it is articulated. The contracts at issue in these cases involved agreements not to compete upon terminating employment or selling a business, and we understand their holdings to be informed and limited by the factual context presented. So given the Supreme Court of California has told us all, don't read these cases for anything more than the facts of them, how can we fault this arbitration panel for not following the very same cases that Decker presented to them? If, in fact, the arbitrators decided, hey, this case is different, it's pre-employment, it's not the same as the cases relied upon by Decker. I don't think we can, and we certainly can't say there's a manifest disregard for the law or a violation of clearly applicable and dominant public policy. Certainly. Can you have something that violates public policy but is not in manifest disregard of the law? I have not seen a case in this circuit that says that. Or any other circuit or any other Supreme Court or anywhere else. Well, there is because, again, this public policy, in our view, well, I think it's pretty clear, it doesn't arise under the FAA. It arises out of these labor collective bargaining cases under the LMRA. But since the public policy has to be well-defined and dominant and explicit, if it's not in manifest disregard of the law, how could it be a violation of public policy? I don't think so. And the courts in this circuit that have looked at it have always aligned the two, similar to the way the district court did here, to say, look, because there is no law right on point here that we can say that the panel or the arbitrators ignored, we can't say that you've satisfied the public policy test. So I think they need to be aligned. Now, in labor cases, there are cases where words have been made clear on public policy, but it's typically when someone's being reinstated to work, for example, this is in our brief, a sexual harasser is being put back into the office with people he harassed, or a pilot who flew a commercial airline intoxicated is being put back to work. But the other distinction there is that the relief in those instances, first of all, there are also cases to the contrary, I believe, which say that it has to be against the law to put the person back to work, not just against the law to fire the person, because it's the relief that has to violate positive law. And here, the relief is just paying some money, basically. A gigantic Swiss bank is going to have to pay the money they voluntarily, the debt they voluntarily agreed to undertake when they made Mr. Becker as law. I mean, if instead what they were doing was ordering him to work for Credit Suisse, that would be a different story, but that's not what's going on here. Correct. Correct. I did want to briefly address under manifest disregard for the law, because Mr. Becker cited it, the comedy club decision in which this court did find manifest disregard for the law. It's highly distinguishable. In that case, there was a reasoned decision. And in issuing a nationwide non-compete injunction, what the arbitrator did was take a case that was right on point regarding 16-600 and said explicitly in his reasoning that that case doesn't concern 16-600, it only concerns antitrust laws. It only concerns what? Antitrust laws. And this court just couldn't square the two. I mean, if you read the case, it was called Dayton Time Lock. It specifically addressed the type of contracts at issue in that case, which were business-to-business franchise-type agreements. And Dayton Time Lock set forth very specific standards under 16-600 for when and how those agreements were enforceable. This court just couldn't square that the arbitrator said that case didn't concern 16-600 when, by its expressed words, it did. We have nothing like that here. Again, we don't know why the arbitrators made the decision they did. They just said it was based on the specific facts of this case, which are, frankly, quite unique. But what we do know is that none of the cases relied upon by Mr. Decker were right on point, as I've talked about before. They're very different, and the Supreme Court of California has told us not to read them any broader than the facts of those cases allow. One final note is, based on our research, this court has never vacated an arbitration award in an FAA case on the grounds of public policy. And we just certainly suggest that the facts of this case certainly do not present the opportunity to be the first of its kind. Any other questions? All right, thank you. Thank you. If I may, I'd like to go back to the public policy of the State of California and the notion that pre-employment is somehow different from post-employment. California has one of the strongest, most fundamental public policies in the state, favoring open competition and employee mobility. To say play hut says that. Indeed, the legislature, in amending 16600, admittedly, after the facts of this case, making 16600 stronger, said we're not changing the public policy. We're merely restating the public policy that employee mobility is fundamental in the State of California. To show how fundamental employee mobility is in this state, employee mobility has been part of the public policy of this state for over 150 years. It predates discrimination statutes. That's how long employee mobility, including 16600, pre-employment or post-employment, has been the public policy of the state. To carve out a niche and say, well, in this unique instance, because it was before Mr. Decker started, 16600 doesn't apply, or 150 years doesn't apply, is — You also contend that this was a manifest disregard case. But if it wasn't, let's assume it wasn't, because there was no specific law as to a contract like this, then how can something be against public policy but not manifest disregard when in order to be against public policy, it has to conflict with a well-established, explicit, positive law rule? It seems like the two collapse into each other very much. Well, for manifest disregard, the law has to be well-defined, explicit, and clearly applicable. And the language of our public policy is pretty much the same. It is. It is. So what's the difference? How can it be not manifest disregard but against public policy? The difference is the court looks to the public policy, the strong public policy, and then looks in a public policy case and then looks to the award. And does the award violate the public policy? This award does. But it's not in manifest disregard of the law? I think it's also manifest disregard of the law. But suppose we thought it wasn't in manifest disregard of the law. Could it then violate public policy? I'm sorry, Your Honor? Suppose it wasn't in manifest disregard of the law, we thought. Could it then violate public policy? It could. It could. That's what I want to know. How? Well, because the standards are different, you don't need to know the reasoning. The standards aren't different. We just read them, they're pretty much the same. You agreed with that? I do, but the standards are different because you don't need to look into the reasoning of the arbitration panel on a public policy analysis. And I will say that public policy is a ground for vacature in the Ninth Circuit. We've had cases. Can you point to one in which an arbitration award has been vacated? It's been vacated, but where public policy was argued and no one said, oh, gee, it's outside the FAA, you can't argue that. I mean, we have the. You can't argue it. I'm just saying it's not going to come out differently depending on what you call it. Well, it didn't come out differently in those cases because there wasn't a long-term established public policy as there is in this case. I would like to say, because I'm almost out of time, Ixchel is a red herring. Ixchel is a business-to-business case. The Supreme Court of California said in Ixchel, in the employment context, we reinforce Edwards that any employment restriction on competition is per se, that's their words, not mine, per se invalid. We know that isn't true because it's not true with regard to employment, a term of employment, right? Contract. I'm telling you what the Court said in Edwards, Your Honor. In the employment context, non- Right, they were referring to the Edwards situation, but they weren't referring to a person with a contract of employment for a time period. They're referring to a period when the employee had no other obligation to the employer and vice versa. Your Honor, that is true, but it shouldn't make any difference. In this case, Mr. Decker was punished for having the temerity, having stayed at Credit Suisse. All right, Counselor, I think you are out of time. Any final questions? Thank you very much for your respective presentations. Thank you. Thank you. And this matter of Jeffries v. Decker will stand submitted.
judges: BERZON, MENDOZA, Liburdi